IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

ETHEL and LEWIS KELLY,

                              Plaintiffs,

v.

CLEAR RECON CORP, FEDERAL
NATIONAL MORTGAGE ASSOCIATION,
and LOAN DEPOT.COM, LLC,

                              Defendants.

Case No. 3:19-cv-00185-TMB

ORDER ON LOAN DEPOT.COM,
LLC'S MOTION TO DISMISS COUNT
IV OF PLAINTIFFS' THIRD AMENDED
COMPLAINT (DKT. 52)

## I.    INTRODUCTION

The matter comes before the Court on Defendant loanDepot.com, LLC's ("loanDepot" or "Defendant loanDepot") Motion to Dismiss Count IV of Plaintiffs' Third Amended Complaint (the "Motion").[1]  The Motion seeks to dismiss Count IV of Plaintiffs Ethel and Lewis Kelly's (collectively, "the Kellys") Third Amended Complaint ("TAC")[2] pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim.[3]  Count IV of the Kellys' claim is brought under the Real Estate Settlement Procedure Act ("RESPA").[4]  The Motion was fully briefed by the Parties.[5]  The Parties have not requested oral argument, and the Court finds it would not be helpful.  For the reasons stated below, loanDepot's Motion is **GRANTED in part** and **DENIED in part**.

---

[1] Dkt. 52 (Motion).

[2] Dkt. 36 at ¶¶ 48–60 (Third Amended Complaint).

[3] Dkt. 52 at 1.

[4] 12 U.S.C. § 2601 *et. seq.*

[5] Dkts. 52; 54 (Opposition); 55 (Reply).

1

## II. BACKGROUND

The present dispute before the Court arises from a foreclosure sale coordinated by loanDepot, Federal National Mortgage Association ("Fannie Mae"), and Clear Recon Corporation ("Clear Recon" and, collectively, the "Defendants").[6] The allegations contained in the TAC are summarized below.

### A. Procedural History and Third Amended Complaint

In 2001, the Kellys acquired a home loan with Homestate Mortgage Company, LLC.[7] The resulting Deed of Trust ("DOT") named Homestate Mortgage Company, LLC as a beneficiary and Pacific Northwest Title as trustee.[8] After executing several subsequent Deeds of Trust, in 2013, the Kellys claim they executed the DOT that named loanDepot as the beneficiary.[9] Sometime in the period between 2016 and 2018, the Kellys fell behind on their loan payments to loanDepot.[10] In response, loanDepot accelerated the Kellys' loan.[11] On August 22, 2018, loanDepot appointed Clear Recon as successor trustee.[12] On that same day, Clear Recon recorded a Notice of Default, which stated that a foreclosure sale by public auction would occur on November 28, 2018.[13]

---

[6] Dkt. 36 at ¶¶ 1–21.

[7] *Id.* at ¶ 8.

[8] *Id.* at ¶ 9.

[9] *Id.* at ¶ 10.

[10] *Id.* at ¶¶ 11–13.

[11] *Id.* at ¶ 14.

[12] *Id.* at ¶ 15.

[13] *Id.* at ¶ 16.

2

However, on or about November 19, 2018, Ethel Kelly filed for bankruptcy, which stayed the foreclosure proceedings.[14]  Clear Recon postponed the auction.[15]  Ethel Kelly's bankruptcy proceedings were eventually dismissed.[16]  After the dismissal, on January 30, 2019, Clear Recon conducted a foreclosure auction without notifying them of the time or place of the rescheduled sale.[17]  The Kellys were unaware that the rescheduled sale had taken place until they were informed by Alaska Legal Services Corporation.[18]  Following the sale, on February 8, 2019, Clear Recon assigned the property to Fannie Mae.[19]  Fannie Mae scheduled a second sale of the property for April 8–10, 2019.[20]  On March 15, 2019, the Kellys requested information from loanDepot pursuant to RESPA to no avail.[21]  In their RESPA request, the Kellys identified the property address and loan number, and specifically listed the information requested.[22]  Despite the foreclosure sale, the Kellys remain in possession of the property.[23]

---

[14] *Id.* at ¶ 17.

[15] *Id.* at ¶¶ 17–18.

[16] *Id.* at ¶ 19.

[17] *Id.* at ¶¶ 20–23.

[18] *Id.* at ¶ 23.

[19] *Id.* at ¶ 22.

[20] *Id.* at ¶ 24.

[21] Dkt. 36 at ¶¶ 27–28.

[22] *Id.* at ¶ 28 (citing Dkt. 36-1 (Qualified Written Request ("QWR")).

[23] *Id.* at ¶ 33.

On March 29, 2019, the Kellys filed a Complaint in the Superior Court for the State of Alaska.[24]  On June 12, 2019, the Kellys filed an Amended Complaint in state court.[25]  On July 2, 2019, loanDepot and Fannie Mae removed this action to federal court invoking the Court's federal question jurisdiction under 28 U.S.C. § 1331.[26]  On July 9, 2019, loanDepot and Fannie Mae filed a Motion to Dismiss the Amended Complaint (the "First Motion to Dismiss") pursuant to Fed. R. Civ. P. 12(b)(6), which Clear Recon joined.[27]

The Kellys' Amended Complaint raised four claims.[28]  First, the Kellys requested that the Court quiet title in their favor for the property at issue here, or alternatively "remove the cloud on plaintiffs' title."[29]  Second, the Kellys claimed that their DOT mandated that loanDepot give them notice before accelerating their loan, which it failed to do.[30]  Therefore, the Kellys claimed that loanDepot is in breach of contract and requested that the Court rescind the foreclosure sale and award damages to the Kellys.[31]  Third, the Kellys claimed that their DOT mandated loanDepot give them notice of the time and place of a foreclosure sale before conducting the sale, which it failed to do.[32]  Therefore, the Kellys claimed that loanDepot again breached its contract and

---

[24] Dkt. 1-1.

[25] *Id.* at 27–36.

[26] Dkt. 1 (Notice of Removal).

[27] Dkts. 4 (First Motion to Dismiss); 5 (Joinder to Motion).

[28] Dkt. 1-1 (Amended Complaint).

[29] *Id.* at ¶¶ 30–33.

[30] *Id.* at ¶¶ 34–39.

[31] *Id.* at ¶¶ 38–39.

[32] *Id.* at ¶¶ 40–45.

4

requested that the Court rescind the foreclosure sale and award damages.[33]  Fourth, by failing to respond to their request for information, the Kellys claimed loanDepot violated RESPA, entitling them to actual damages, statutory damages, costs, and attorney's fees.[34]

The Court granted in part the First Motion to Dismiss without prejudice and denied it in part.[35]  Relevant here is the Court's treatment of Count IV, the RESPA claim.  The Court found that the Kellys "sufficiently pleaded that loanDepot was their loan servicer bound by RESPA."[36] However, the Court found that the Kellys did not provide any information about their request sent to loanDepot, such as "the date on which the request was sent" or "the contents of the request[,]" which would be necessary to allege that it complied with RESPA.[37]  As a result, the Court found that the "Amended Complaint [did] not properly put Defendants on notice of a RESPA violation."[38]  The Court further found that "the Kellys have not adequately pleaded damages."[39] The Amended Complaint only alleged that loanDepot was "liable for actual damages, statutory damages, and costs[,]" but did not "allege a basis for actual damages" or "a pattern or practice

---

[33] Id..

[34] Id. at 8, ¶¶ 46–52.

[35] Dkts. 4 (Defendants' First Motion to Dismiss); 18 (Order on Defendants' First Motion to Dismiss).

[36] Id. at 16.

[37] Id.

[38] Id.

[39] Id.

5

which would entitle them to statutory damages."[40] The Court accordingly granted the First Motion to Dismiss as to Count IV, but gave the Kellys leave to amend.[41]

The Kellys filed a Second Amended Complaint.[42] Defendants then filed a Second Motion to Dismiss, which was denied as moot because subsequent to Defendants' filing of the Second Motion to Dismiss, the Court granted the Kellys' Motion to File Third Amended Complaint.[43] The TAC was filed on April 2, 2020, bringing four claims on substantially the same basis as the Amended Complaint previously considered by the Court.[44] The parties then engaged in settlement discussions over several months, which were unsuccessful.[45] Clear Recon and Fannie Mae subsequently filed Answers to the TAC, and loanDepot filed the present Motion, seeking to dismiss Count IV.[46]

### B. Motion to Dismiss Count IV

Defendant loanDepot moves to dismiss Count IV of the TAC.[47] It makes two arguments in support of its Motion. First, it argues that "Plaintiffs are still unable to plead any cognizable claim for RESPA" because "information requests sent *after* a foreclosure sale occurs . . . trigger[]

---

[40] *Id.* at 17.

[41] *Id.*

[42] Dkt. 21 (Second Amended Complaint).

[43] *See* Dkts. 22 (Second Motion to Dismiss); 28 (Motion to File Third Amended Complaint); 29 (Memorandum in Support of Motion to File Third Amended Complaint); 35 (Text Order Granting Motion to Amend Third Amended Complaint and Denying Second Motion to Dismiss as moot).

[44] Dkt. 36.

[45] *See* Dkts. 47 (Joint Case Status Report); 48 (Text Order).

[46] *See* Dkts. 51 (Clear Recon Answer); 52; 53 (Fannie Mae Answer).

[47] Dkt. 52 at 1.

6

no duties or obligations under RESPA."[48]  Defendant loanDepot argues that once the foreclosure sale occurs, there is "no mortgage loan and thus no servicing relationship subject to RESPA's obligations" and "[o]n that basis alone, Count IV should be dismissed."[49]  For RESPA to apply, loanDepot states that "at the time loanDepot received Plaintiffs' correspondence, it must have been a servicer of a federally-related mortgage loan."[50]  It cites various federal regulations, including 12 C.F.R. §§ 1024.36(a), 1024.31, and 1024.2 for the proposition that loanDepot had to be actively servicing the Kellys' loan at the time the Kellys submitted their qualified written request ("QWR").[51]  Since the foreclosure sale took place on January 30, 2019, and the QWR was sent on March 15, 2019, "no duties or obligations under RESPA were triggered."[52]

Second, loanDepot argues that, even if the Kellys could state a claim under RESPA, Count IV should still be dismissed because "[the Kellys] failed to plead any facts supporting their conclusory allegation of damages."[53]  It argues that the Kellys "must show actual injury" and that the actual damages alleged, including "'costs of copy documents, travel expenses to and from their attorney's office, postage fees and emotional and psychological damages'" are insufficient to carry the Kellys' burden to sufficiently allege actual damages.[54]  More specifically, loanDepot argues that the Kellys have not alleged sufficient facts to show that their damages were suffered *as a*

---

[48] *Id.* at 2 (emphasis in original).

[49] *Id.*

[50] *Id.* at 5.

[51] *Id.*

[52] *Id.* at 5–6.

[53] *Id.* at 2.

[54] *Id.* at 7–8.

*result of* the RESPA violation.[55]  It notes that authority in the Ninth Circuit is split as to the recoverability of damages for emotional distress, however, it asserts that the Kellys have not alleged how emotional distress arose from the alleged RESPA violation.[56]  Finally, loanDepot argues that the Kellys' "conclusory allegation of loanDepot's purported 'pattern and practice' of violations . . . must also be rejected."[57]  It argues that the Kellys have alleged no additional facts that would cure the deficiency as to these statutory damages.[58]

### C.  The Kellys' Response

The Kellys oppose the Motion and argue that they have pleaded sufficient facts to state a claim under RESPA.[59]  First, they argue that the cases cited by loanDepot pertain to judicial foreclosures—as opposed to here, which was a non-judicial foreclosure—and that "[h]ere, [] there is no final judgment for foreclosure and there is nothing in Alaska law holding that a homeowner's claims are 'merged' once a non-judicial foreclosure sale occurs."[60]  The Kellys further argue that federal regulations provide "that servicers must respond to qualified written requests up to a year after the loan is transferred or discharged."[61]

---

[55] *Id.* at 8 (emphasis added).

[56] *Id.* at 10.

[57] *Id.* at 11–12.

[58] *Id.* at 12.

[59] Dkt. 54 at 1, 4.

[60] *Id.* at 4.

[61] *Id.* at 4–5 (citing 12 C.F.R. § 1024.36) (emphasis removed).  The Kellys cite to 12 C.F.R. §§ 1024.36(a)(g)(1)(iii) and 1024.35(a)(f)(1)(v), however, the applicable C.F.R. section appears to be § 1024.36(f)(1)(v). *See id.*

8

Second, the Kellys argue that their pleading sufficiently alleges actual and statutory damages.[62] They cite *Watson v. Bank of Am., N.A.*, a district court opinion cited by the Court in its Order addressing the First Motion to Dismiss, which supports the proposition that alleging damages such as "the costs of copying documents, travel expenses to and from their attorney's office, postage fees and emotional and psychological damages" is sufficient.[63] As to damages for emotional and psychological distress, the Kellys state that "the [Ninth] Circuit has determined that emotional damages are obtainable under RESPA" and that since the Kellys "have pled emotional distress as a result of loanDepot's RESPA violations," the Motion should fail.[64]

### D. Defendant loanDepot's Reply

Defendant loanDepot filed a Reply reiterating its arguments.[65] It argues that the Kellys' theory that "somehow RESPA's QWR provisions apply post-sale in the non-judicial foreclosure context, but not in the judicial foreclosure context, is a distinction without any meaningful difference" and is "legally irrelevant."[66] Defendant loanDepot argues that "once a foreclosure sale occurs . . . there is simply no 'servicer' of a 'federally-related mortgage loan' as a matter of law."[67] In a footnote, loanDepot dismisses the Kellys' argument that 12 C.F.R. § 1024.36(f)(1)(v) requires loanDepot to respond to a QWR up to one year after the loan is discharged.[68] It notes that the

---

[62] *Id.* at 5.

[63] *See id.*; No. 16CV513-GPC(MDD), 2016 WL 3552061, (S.D. Cal. June 30, 2016).

[64] Dkt. 54 at 6.

[65] Dkt. 55.

[66] *Id.* at 2–3.

[67] *Id.* at 3.

[68] *Id.* at 4–5 n.2.

Case 3:19-cv-00185-TMB   Document 57   Filed 08/13/21   Page 9 of 24

Kellys' loan was not "service-transferred to anyone else" or discharged in bankruptcy and that here, once the sale occurred, there was no loan within the meaning of RESPA.[69]

As to the Kellys' argument regarding damages, loanDepot argues that the Kellys "baldly allege" their actual damages but have not established a link between the alleged RESPA violation and those damages.[70] It cites multiple cases where district courts in the Ninth Circuit have rejected claims for emotional damages where the plaintiff does not sufficiently allege a causal connection between the alleged damages and the RESPA violation.[71]

### III.    LEGAL STANDARDS

*A.  Federal Rule of Civil Procedure 12(b)(6)*

Defendant loanDepot moves under Federal Rule of Civil Procedure ("Rule") 12(b)(6) to dismiss Count IV of the TAC for failure to state a claim upon which relief can be granted.[72] In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief,"[73] and "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[74] In ruling

---

[69] *Id.*

[70] *Id.* at 5–6.

[71] *See id.* at 6–7.

[72] Dkt. 52 at 1.

[73] Fed. R. Civ. P. 8(a)(2).

[74] *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).

on a 12(b)(6) motion, the Court must "'accept all factual allegations of the complaint as true and draw all reasonable inferences in favor of the nonmoving party.'"[75]

In determining whether a complaint pleads sufficient facts to cross "the line between possibility and plausibility," "[t]hreadbare recitals of the elements of a cause of action" and "conclusory statements" do not suffice.[76] However, a plaintiff need not plead "all facts necessary to carry" his or her burden.[77] "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[78] So long as plaintiffs meet this standard of plausibility, their claim survives a 12(b)(6) motion even if defendants present a similarly plausible description of the disputed events.[79] "'A dismissal for failure to state a claim is proper only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"[80]

---

[75] *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 923 (9th Cir. 2001) (quoting *Nat'l Ass'n for the Advance. of Psychoanalysis v. Cal. Bd. of Psychology*, 228 F.3d 1043, 1049 (9th Cir. 2000)).

[76] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 557).

[77] *Al-Kidd v. Ashcroft*, 580 F.3d 949, 977 (9th Cir. 2009), *rev'd on other grounds* 563 U.S. 713 (2011).

[78] *Iqbal*, 556 U.S. at 679 (citation omitted).

[79] *Starr v. Baca*, 652 F.3d 1202, 1216–17 (9th Cir. 2011).

[80] *Arpin*, 261 F.3d at 923 (quoting *Pillsbury, Madison & Sutro v. Lerner*, 31 F.3d 924, 928 (9th Cir. 1994)).

11

Generally, the court should not consider materials outside of the pleadings when ruling on a motion to dismiss for failure to state a claim.[81]  Courts may consider additional materials where the complaint "necessarily relies" on those documents and their authenticity is not disputed.[82]

### B. RESPA

RESPA requires the servicer of a federally-related mortgage loan to provide a timely written response to inquiries from borrowers regarding the servicing of their loans.[83]  A loan servicer must comply with the regulatory requirements under RESPA for any request for information that (1) is written; (2) includes the name of the borrower; (3) includes "information that enables the servicer to identify the borrower's mortgage loan account"; and (4) "states the information the borrower is requesting with respect to the borrower's mortgage loan."[84]  The requirements of 12 C.F.R. § 1024.36 do not apply where "[t]he information request is delivered to a servicer after more than one year after . . . [t]he mortgage loan is discharged."[85]

Within five days of receiving a compliant request, the servicer must provide the borrower a written acknowledgment of the information request.[86]  Within 30 days of the request, the servicer must also provide the borrower with the requested information or notification that the servicer has determined the information is not available.[87]  If the servicer fails to respond to a proper request,

---

[81] *Id.* at 925 (citing *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994)).

[82] *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998–99 (9th Cir. 2010) (citations omitted).

[83] 12 U.S.C. § 2605(e)(1)(A), (e)(2).

[84] 12 C.F.R. § 1024.36(a).

[85] 12 C.F.R. § 1024.36(f)(v)(B).

[86] 12 U.S.C. § 2605(e)(1)(A).

[87] 12 U.S.C. § 2605(e)(2).

12

RESPA entitles the borrower to recover actual damages and, if there is a "pattern or practice of noncompliance," statutory damages of up to $2,000.[88]

In order to survive a motion to dismiss, a plaintiff must sufficiently allege the following elements: (1) defendant is a loan servicer bound by RESPA; (2) defendant received a compliant request under 12 U.S.C. § 2605(e) from plaintiff; (3) defendant failed to respond adequately; and (4) "plaintiffs must also allege actual, cognizable damages resulting from the Defendants' failure to respond . . . ."[89] A plaintiff must provide sufficient information about the nature of their request for information as to put the defendant on notice.[90] For example, where a plaintiff fails to attach letters to the servicer or otherwise describe their contents, dismissal is proper.[91]

## IV. DISCUSSION

The Court will address the two elements disputed by the Parties. First, whether loanDepot was bound by RESPA at the time the Kellys sent their QWR and, second, whether the Kellys have sufficiently pleaded actual and statutory damages resulting from loanDepot's failure to respond to the Kellys' QWR. The Court finds that based on the request attached to the TAC as Exhibit 36-1,

---

[88] 12 U.S.C. § 2605(f).

[89] *See* 12 U.S.C. § 2605(e); *Eddy v. Fed. Home Loan Mortg. Corp.* (*As Tr. for Freddie Mac MultiClass Certificates Series 3450*, No. 218-cv-2267-KJM-EFB PS, 2019 WL 4298043, at *5 (E.D. Cal. Sept. 11, 2019) (internal quotation marks and emphasis omitted); *Walker v. Branch Banking & Tr. Co.*, 237 F. Supp. 3d 1326, 1331 (S.D. Fla. 2017).

[90] *Evans v. Nationstar Mortg., LLC*, No. 215-cv-1213-JAM-GGH PS, 2015 WL 6756255, at *8 (E.D. Cal. Nov. 5, 2015).

[91] *Id.* (holding where "plaintiff has failed to attach any of the letters . . . [and] plaintiff's description of the letters fails to state whether they included plaintiff's name, information from which [defendant] could identify plaintiff's mortgage loan account, and what information plaintiff was requesting in regard to the loan" the defendant was not put on notice of the claim).

Case 3:19-cv-00185-TMB   Document 57   Filed 08/13/21   Page 13 of 24

the Kellys have sufficiently alleged the other elements as required by statute.[92]  For the reasons discussed below, loanDepot's Motion is **GRANTED in part** and **DENIED in part**.

A.  *Whether loanDepot was obligated under RESPA to respond to the Kellys' QWR dated March 15, 2019*

The Court finds that the foreclosure sale on January 30, 2019, did not absolve loanDepot from responding to the QWR dated March 15, 2019.

Defendant loanDepot asks the Court to find that after January 30, 2019, "there is [was] no mortgage loan and thus no servicing relationship subject to RESPA's obligations."[93]  Defendant loanDepot argues that "a condition precedent to any right of action under . . . RESPA is that at the time loanDepot received Plaintiffs' correspondence, it must have been a servicer of a federally-regulated mortgage loan."[94]  It cites to cases in which district courts dismissed RESPA claims based on QWRs sent after a foreclosure.[95]  The Kellys disagree, arguing that the cases cited by loanDepot are distinguishable and that loan servicers still have obligations under RESPA even after they are no longer actively servicing a loan.[96]

In interpreting the meaning of 12 U.S.C. § 2605(e), the applicable section of RESPA, the Court "first consider[s] the plain text of the statute."[97]  The Court "'examine[s] not only the

---

[92] By attaching a copy of the QWR, the Kellys addressed the Court's previous concern that the RESPA claim was not adequately pleaded without attaching a copy of the QWR or "otherwise describ[ing] the contents of the request[.]"  *See* Dkt. 18 at 16.

[93] Dkt. 52 at 2.

[94] *Id.* at 5.

[95] *Id.* at 6.

[96] Dkt. 54 at 4–5.

[97] *Corns v. Labs. Intern. Union of N.A.*, 709 F.3d 901, 908 (9th Cir. 2013) (citing *Washington v. Chimei Innolux Corp.*, 659 F.3d 842, 847 (9th Cir. 2011)); *Thomas v. CalPortland Co.*, 993 F.3d

specific provision at issue, but also the structure of the statute as a whole, including its object and policy.'"[98]  Section 2605(e) imposes duties on loan servicers to respond to borrower inquiries.  It states:

> If any servicer of a federally related mortgage loan receives a qualified written request from the borrower (or an agent of the borrower) for information relating to the servicing of such loan, the servicer shall provide a written response acknowledging receipt of the correspondence within 5 days[.][99]

The Section goes on to state that after receiving a QWR, a servicer[100] must comply with the following:

> Not later than 30 days . . . after the receipt from any borrower of any qualified written request . . . and, if applicable, before taking any action with respect to the inquiry of the borrower, the servicer shall . . .
>
> > (B) after conducting an investigation, provide the borrower with a written explanation or clarification that includes—
> >
> > > (i) to the extent applicable, a statement of the reasons for which the servicer believes the account of the borrower is correct as determined by the servicer; and
> > > (ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower; or
> >
> > (C) after conducting an investigation, provide the borrower with a written explanation or clarification that includes—
> >
> > > (i) information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer; and

---

1204, 1209 (9th Cir. 2021) (noting statutory interpretation begins with examining the plain text of a statute).

[98] *Chimei Innolux*, 659 F.3d 842 at 847–48 (quoting *Children's Hosp. & Health Ctr. v. Belshe*, 188 F.3d 1090, 1096 (9th Cir. 1999)).

[99] 12 U.S.C. § 2605(e)(1)(A).

[100] A "servicer" is "the person responsible for servicing of a loan (including the person who makes or holds a loan if such person also services the loan)."  12 U.S.C. § 2605(i).

15

> (ii) the name and telephone number of an individual employed by,
> or the office or department of, the servicer who can provide
> assistance to the borrower.[101]

RESPA also empowers the Bureau of Consumer Financial Protection ("CFPB") to "establish any requirements necessary to carry out this section."[102]

As the Ninth Circuit has recognized, RESPA was intended by Congress "to serve consumer-protection purposes."[103] "Congress enacted RESPA in 1974 'to increase the supply of information available to mortgage consumers . . . and to eliminate abusive practices.'"[104] Although RESPA was originally targeted at the real estate settlement process, "the scope of the statute's provisions was expanded in 1990 to encompass loan servicing."[105] "Accordingly, RESPA's provisions relating to loan servicing procedures should be 'construed liberally' to serve the statute's remedial purpose."[106]

Defendant loanDepot asserts, without citing any statutory or binding authority, that "as a condition precedent to any right of action under . . . RESPA . . .at the time loanDepot received

---

[101] 12 U.S.C. § 2605(e)(2)(B) –(C).

[102] 12 U.S.C. § 2605(j)(3).

[103] *Medrano v. Flagstar Bank, FSB*, 704 F.3d 661, 665–66 (9th Cir. 2012) (interpreting what qualifies as a QWR under § 2605(e) and recognizing the "broad remedial purpose" of RESPA).

[104] *Gilliam, Trustee of Lou Easter Ross Revocable Tr. v. Levine, Trustee of the Joel Sherman Revocable Tr., et al.*, 955 F.3d 1117, 1120 (9th Cir. 2020) (quoting *Schuetz v. Banc One Mortg. Corp.*, 292 F.3d 1004, 1008 (9th Cir. 2002)).

[105] *Medrano*, 704 F.3d at 665.

[106] *Id.* at 665–66 (citing *Greenpoint Mortg. Funding, Inc. v. Herrera (In re Herrera)*, 422 B.R. 698, 711–12 (9th Cir. BAP 2010), *aff'd sub nom. Home Funds Direct v. Monroy (In re Monroy)*, 650 F.3d 1300, 1301 (9th Cir. 2011)).

Plaintiffs' correspondence, it must have been a servicer of a federally-related mortgage loan."[107] Put another way, loanDepot argues it has no RESPA obligations for loans it is not actively servicing. The Court disagrees. Contrary to loanDepot's arguments, once the loan is extinguished through a foreclosure sale, loanDepot is not necessarily free of its obligations under RESPA. RESPA does not expressly eliminate a loan servicer's duty to respond to a QWR under 12 U.S.C. § 2605(e) when a loan is discharged or extinguished through a foreclosure. Defendant loanDepot only needs to be a "servicer of a federally related mortgage loan" and "receive[] a [QWR] from the borrower" for loanDepot's obligations to be triggered.[108]

There is no dispute that the Kellys have adequately alleged that they had a "federally related mortgage loan" that—at some point—was being serviced by loanDepot. Defendant loanDepot asserts that it stopped servicing the loan when the foreclosure sale occurred on January 30, 2019.[109] The QWR appended to the TAC indicates that when the QWR was sent, the Kellys believed that loanDepot was actively servicing a mortgage loan on the subject property.[110] Defendant loanDepot's position, however, is that the Kellys were simply out of luck because even though the Kellys believed they had an active loan with loanDepot, and even though the Kellys assert that the foreclosure sale was "illegal[,]"[111] at the time the Kellys sent the QWR loanDepot asserts it had

---

[107] Dkt. 52 at 5.

[108] *See* 12 U.S.C. § 2605(e)(1)(A).

[109] *See* Dkt. 52 at 5.

[110] Dkt. 36-1 at 1 ("Please be advised that I represent Ms. Kelly with respect to the mortgage loan *you are servicing* on the property . . . ." (emphasis added)). Despite this, loanDepot asserts that it is "undisputed the lien was extinguished" and "there was no 'federally related mortgage loan' to service[.]" Dkt. 52 at 5–6.

[111] Dkt. 36 at ¶ 22.

17

no obligation whatsoever to respond to their request for information. This would be tough medicine for the very consumers Congress intended to protect through RESPA.

Importantly, RESPA's implementing regulations clearly impose obligations on servicers that extend after a loan is discharged or otherwise extinguished. Indeed, loanDepot "shall retain records that document actions taken with respect to a borrower's mortgage loan account until one year after the date a mortgage is discharged . . . ."[112] Federal regulations also exempt servicers from the requirements of 12 C.F.R. § 1024.36, which regulates the QWR process, if "[t]he information request is delivered to a servicer more than one year after . . . [t]he mortgage loan is discharged."[113] Federal regulations contemplate borrowers requesting information from loan servicers up to one year after a loan is discharged, which is incongruent with loanDepot's position that its duties were obviated after the foreclosure sale. Defendant loanDepot's position would render 12 C.F.R. § 1024.36 meaningless and is unpersuasive.[114]

Defendant loanDepot implies that even if it had an obligation to respond after a loan was "discharged" per 12 C.F.R. § 1024.36, here "[t]he loan was not . . . discharged in bankruptcy" and thus the Kellys continue to be out of luck.[115] On this issue, the Court further finds the official commentary on the applicable RESPA regulations to be informative. The CFPB adopted a final

---

[112] 12 C.F.R. § 1024.38(c)(1).

[113] 12 C.F.R. § 1024.26(f)(1)(v)(b); *see also* 12 C.F.R. § 1024.35(g)(1)(iii)(B) (notice of error is untimely if delivered to servicer more than one year after a mortgage loan balance is paid in full).

[114] Courts generally avoid interpreting statutes or regulations that would render the text superfluous. *See Cooper Indus., Inc. v. Aviall Servs., Inc.*, 543 U.S. 157, 167 (2004) ("[The Court] must, if possible, construe a statute to give every word some operative effect."); *Boise Cascade Corp. v. U.S. E.P.A.*, 942 F.2d 1427, 1432 (9th Cir. 1991) ("[The Court must] interpret statutes as a whole, giving effect to each word and making every effort not to interpret a provision in a manner that renders other provisions of the same statute inconsistent, meaningless or superfluous.").

[115] Dkt. 55 at 4 n.2.

18

rule in 2013 which amended the RESPA regulations.[116] In adopting the current version of 12 C.F.R. § 1024.36(f)(1)(v)(B), the CFPB stated:

> The Bureau believes it would be impractical to require a servicer to resolve errors and provide information at a time when [RESPA] no longer requires the servicer to retain the relevant records. Conversely, the Bureau believes the servicer should be responsible to correct those records during the period when [RESPA] does require a servicer to retain records, if necessary, and provide borrowers information from the records. Further, the Bureau believes the use of the term "discharged" is appropriate, especially given that the term is already used in the timing of the record-retention requirement. For purposes of the Bureau's mortgage servicing rules, as opposed to bankruptcy purposes, a mortgage loan is discharged when both the debt and all corresponding liens have been extinguished or released, as applicable.[117]

The CFPB's position appears to be that servicers have an obligation to respond to QWRs up to one year after a mortgage loan is discharged. Further, the CFPB's interpretation of the term "discharged" is distinguishable from the term's use in the bankruptcy context, contrary to loanDepot's position. While the CFPB's interpretation of its own regulation is not dispositive, the Court finds that the CFPB's position is both persuasive and consistent with the plain text of the statute, the statute's implementing regulations, and Congress's intent. Other courts have also looked to the CFPB's commentary when interpreting the CFPB's regulations.[118] Accordingly, for

---

[116] Amendments to the 2013 Mortgage Rules Under the Equal Credit Opportunity Act (Regulation B), Real Estate Settlement Procedures Act (Regulation X), and the Truth in Lending Act (Regulation Z), 78 FR 60382–01, 2013 WL 5428278, *60392–93 (Oct. 1, 2013).

[117] *Id.*

[118] *See, e.g.*, *Zaychick v. Bank of Am., N.A.*, No. 9:15–CV–80336–ROSENBERG, 2015 WL 4538813, at *2 (S.D. Fla. July 27, 2015) (citing official CFPB commentary); *Nash v. PNC Bank, N.A.*, No. TDC-16-2910, 2017 WL 1424317, at *4 (D. Md. Apr. 20, 2017) ("Although the CFPB's commentary is not binding authority, courts have found its official interpretations to be 'highly persuasive' when they fill 'a gap in the text [of a regulation] . . . .'" (citation omitted)); *He v. Ocwen Loan Serv., LLC*, No. 15-CV-4575 (JS)(AKT), 2016 WL 3892405, at *2 (E.D.N.Y. July 14, 2016) (CFPB's official commentary is "highly persuasive"); *see also Auer v. Robbins*, 519 U.S. 452, 461 (1997) (agency's interpretation of its ambiguous regulation is controlling unless it is "'plainly erroneous or inconsistent with the regulation.'").

the foregoing reasons, the Court concludes that loanDepot was not absolved of its duties under RESPA to respond to the Kellys' QWR sent on March 15, 2019.[119]  The Court will therefore not dismiss the Kellys' RESPA claim on this basis.

  *B. Whether the Kellys have sufficiently pleaded actual and statutory damages resulting from loanDepot's failure to respond to the Kellys' QWR.*

  In the Court's Order addressing the First Motion to Dismiss, the Court dismissed the Kellys' RESPA claim without prejudice in part due to the Kellys' deficient pleading regarding damages.[120]  The Court found that the Kellys did not adequately plead any actual damages, as required by statute, and that by "only alleg[ing] a single instance of noncompliance with RESPA[,]" they could not be entitled to statutory damages.[121]  The Court finds that the TAC adequately alleges some actual damages, but not statutory damages.  The Court will address each in turn.

---

[119] The Court also notes that all but one of the cases cited by loanDepot involved QWRs sent more than one year after discharge of the underlying mortgage loan at issue.  *See Kajla v. U.S. Bank Nat'l Ass'n ex. rel. Credit Suisse First Boston MBS ARMT 2005-8*, No. 17–8953, 2018 WL 1128498, at \*7 (D. N.J. Mar. 1, 2018) (foreclosure judgment entered in March 2015, but purported QWR sent in August 2017); *Goodgame v. Countrywide Home Loans, Inc.*, No. 1:16-CV-0634-LMM-JFK, 2016 WL 10988802, at \*7 (N.D. Ga. Dec. 16, 2016) (foreclosure sale scheduled for August 2014, but purported QWR sent in 2016); *Wright ex rel. Estate of Wright v. Nationstar Mortg., LLC*, 2016 WL 1077164, at \*7 (D. Md. Mar. 18, 2016) (foreclosure sale took place in June 2013, but purported QWR sent in September 2014); *Ahmed v. Wells Fargo Bank, N.A.*, 432 F. Supp. 3d 556, 562–64 (E.D. Pa. 2020) (no date of purported QWR request provided and where the court declined to decide whether the plaintiff's QWR allegations were sufficient).

The Court disagrees with the approach taken by the District of New Jersey in the unpublished case of *Perez v. Seterus*, cited by loanDepot, in which the court summarily dismissed a plaintiff's RESPA claim because the plaintiff's QWR was sent to the defendant loan servicer three months after a foreclosure judgment.  *See Perez v. Seterus, Inc.*, No. 17–5862 (JLL), 2017 WL 5513687, at \*4 (D. N.J. Nov. 16, 2017).

[120] *See* Dkt. 18 at 16 ("Additionally, the Kellys have not adequately pleaded damages.").

[121] *Id.* at 17.

*i.* *Claim for Actual Damages*

The Kellys allege that they "suffered damages . . . including but not limited to the costs of copying documents, travel expenses to and from their attorney's office, postage fees and emotional and psychological damages."[122]  Defendant loanDepot argues that the Kellys' claim for actual damages is "not accompanied by any facts . . . to establish 'a link between the alleged damages and the alleged RESPA violations.'"[123]  It concedes that courts in the Ninth Circuit are divided as to whether emotional and psychological damages are recoverable under RESPA, but reiterates that the Kellys have not alleged a sufficient nexus between their damages and the alleged RESPA violation.[124]  On the other hand, the Kellys, with citation to relevant case law, assert that their allegations are "sufficient to withstand a motion to dismiss."[125]

The Court agrees with the Kellys that, at the motion to dismiss stage, they have adequately pleaded certain actual damages as a result of loanDepot's alleged violation of RESPA.  The Court finds the TAC plausible on its face that expenses such as "the costs of copying documents, travel expenses to and from their attorney's office, [and] postage fees" would arise from loanDepot's failure to respond to the Kellys' QWR, especially given the amount of information requested by the Kellys through the QWR.  However, the Court does not find the Kellys' claim for "emotional and psychological damages[,]" without further elaboration, to be plausible.[126]  The TAC details

---

[122] Dkt. 36 at ¶ 31.

[123] Dkt. 52 at 8 (quoting *Krasucki v. Nationstar Mortg., LLC*, No. C15-0229JLR, 2015 WL 11251850, at *4 (W.D. Wash. July 8, 2015)).

[124] *Id.* at 9–10.

[125] Dkt. 54 at 5.

[126] The Court need not weigh in on the split within the Ninth Circuit about whether emotional and psychological damages are recoverable under RESPA, since here it finds the Kellys' pleading of emotional and psychological damages implausible. *See Phillips v. Bank of Am. Corp.*, No. 5:10–

circumstances in the years preceding their submission of the QWR to loanDepot, including family health challenges, falling behind on their mortgage payments, being victims of a scam organization, filing for bankruptcy, and ultimately, having their home foreclosed upon.[127] The Kellys allege that loanDepot did not receive the QWR until March 19, 2019, and it is undisputed that the earliest date loanDepot could have been in violation of RESPA is March 24, 2019.[128] The first Complaint in this case was filed on March 29, 2019.[129] The Kellys make no effort, in the TAC or their briefing, to explain how it is plausible, rather than merely possible, that loanDepot's silence *caused* discrete damages in the form of emotional and psychological distress after its alleged RESPA violation.[130] The Kellys did not meet their obligation to allege "more than . . . conclusions, and a formulaic recitation of the elements of a cause of action[.]"[131] The Court agrees with courts in the Ninth Circuit that conclusory allegations of emotional damages, like here, are insufficient.[132]

---

CV–04561 EJD, 2011 WL 4844274, at *5 (N.D. Cal. Oct. 11, 2011) (rejecting a claim for emotional distress because the plaintiff did not allege a plausible claim that he suffered emotional distress as a result of the defendant's alleged RESPA violation).

[127] *See* Dkt. 36 at ¶¶ 11–13, 17, 21–22.

[128] *Id.* at ¶ 29. The Court reaches this conclusion since loanDepot had at least five days after receiving the QWR to send an acknowledgment of the request, assuming the QWR was received on March 19, 2019. *See* 12 U.S.C. § 2605(e)(1)(A).

[129] Dkt. 1-1.

[130] *See Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]" (citation omitted)).

[131] *Id.*

[132] *See, e.g.*, *Krasucki*, No. C15-0229JLR, 2015 WL 11251850, at *4 (dismissing a RESPA claim where plaintiff's damages allegations were conclusory); *Phillips*, No. 5:10–CV–04561 EJD, 2011 WL 4844274, at *5; *Lawther v. Onewest Bank*, No. C 10–0054 RS, 2010 WL 4936797, at *7 (N.D.

Accordingly, the Motion is **DENIED in part** as to the Kellys' alleged actual damages for "the costs of copying documents, travel expenses to and from their attorney's office, [and] postage fees," and **GRANTED in part** as to the Kellys' claim for emotional and psychological damages.

### ii. Claim for Statutory Damages

Next, the Court finds that the Kellys failed to adequately allege a basis for statutory damages. Under RESPA, if the servicer fails to respond to a proper request, RESPA entitles the borrower to recover damages of up to $2,000 if plaintiffs can allege a "pattern or practice of noncompliance[.]"[133] The Court in its Order addressing the First Motion to Dismiss found that the Kellys "only alleged a single instance of noncompliance with RESPA" and dismissed without prejudice the Kellys' statutory damages claim.[134] The Kellys continue to allege only one instance of noncompliance with RESPA and otherwise failed to adequately cure their defective pleading. Since the TAC alleges no additional facts that would establish a "pattern or practice of noncompliance," the Motion is **GRANTED in part** as to the Kellys' demand for statutory damages.[135]

---

Cal. Nov. 30, 2010) (no colorable relationship between alleged RESPA violation and emotional harm).

[133] 12 U.S.C. § 2605(f).

[134] Dkt. 18 at 17.

[135] *See, e.g.*, *Lawther*, No. C 10–0054 RS, 2010 WL 4936797, at *7 (noting that statutory damages are not available based on a "single QWR refusal"); *Givant v. Vitek Real Estate Indus. Grp., Inc.*, No. 2:11–cv–03158–MCE–JFM, 2012 WL 5838934, at *5 (E.D. Cal. Nov. 15, 2012) (rejecting claim for statutory damages as conclusory); *Nash*, No. TDC-16-2910, 2017 WL 1424317, at *4 (rejecting statutory damages claim based on single alleged RESPA violation).

## V.    CONCLUSION

Having carefully reviewed the allegations in the TAC and the parties' briefing, the Motion is **GRANTED in part** and **DENIED in part** as follows.  The Court **GRANTS in part** loanDepot's Motion as to the Kellys' RESPA claim in Count IV for (1) emotional and psychological damages and (2) statutory damages.  The Court further finds that permitting the Kellys leave to amend the TAC would be futile.  The Court **DENIES in part** the Motion as to the Kellys' RESPA claim in Count IV for certain actual damages including "the costs of copying documents, travel expenses to and from their attorney's office, [and] postage fees[.]"  Pursuant to Rule 12(a)(4)(A), loanDepot shall file its Answer to the Kellys' TAC within fourteen days of this Order's issuance.

IT IS SO ORDERED.

Dated at Anchorage, Alaska, this 13th day of August, 2021.

/s/  *Timothy M. Burgess*
TIMOTHY M. BURGESS
UNITED STATES DISTRICT JUDGE